Elijah M. Watkins (ISB No. 8977)
Aaron R. Bell (ISB No. 10918)
DORSEY & WHITNEY LLP
101 South Capitol Boulevard Suite 1100
Boise, ID 83702
Telephone: (208) 617-2550
Fax: (208) 567-4992
Watkins.Elijah@dorsey.com
Bell.Aaron@dorsey.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| AUSTIN JAMES OSBORNE, an individual; <br><br> Plaintiff, <br><br> -vs- <br><br> BARRY MINKOW, an individual, <br><br> Defendant. | Case No. <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Austin James Osborne ("Osborne"), by and through his attorneys of record, Dorsey & Whitney LLP, as and for a complaint against Defendant Barry Minkow ("Minkow") hereby complains and alleges as follows:

## PARTIES

1. Plaintiff Osborne is a resident of Ada County, Idaho, and is a citizen of Idaho for the purposes of diversity jurisdiction.

2. Defendant Minkow is a resident of Las Vegas, Nevada, and is a citizen of Nevada for the purposes of diversity jurisdiction.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) as complete diversity exists between Plaintiff and Defendant, and the amount in controversy exceeds

$75,000. Additionally, this Complaint seeks non-monetary, injunctive relief against Defendant with regard to the causes of action for defamation, defamation per se and breach of contract, the value of which relief exceeds $75,000.

4. The Court also has supplemental jurisdiction over any cause of action pleaded in this Complaint which does not exceed the $75,000 jurisdictional threshold pursuant to 28 U.S.C. § 1367.

5. The Court has personal jurisdiction over Minkow as he has engaged in tortious conduct regarding Osborne in the state of Idaho.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) as the claims in this case arose in this District and the acts for which Plaintiff seeks injunctive and monetary relief took place in this District.

## FACTUAL ALLEGATIONS

### I. Minkow's Actions Against Osborne

7. Osborne is the principal of several companies that are headquartered in Idaho, including but not limited to Cedar Creek Capital LLC ("Cedar Creek").

8. Osborne formed Cedar Creek in January 2020 as a private investment firm that specializes in investments in self-storage facilities. Cedar Creek has over $400 million in transaction volume and more than 600 investors.

9. Osborne also operates other businesses that are impacted by the success and reputation of Cedar Creek.

10. In October 2025, Osborne was informed by several investors of Cedar Creek that there was a blog post on a LinkedIn page ran by Minkow regarding Osborne and Cedar Creek.

11. Specifically, on October 8, 2025, Minkow published a blog post on LinkedIn titled "The Principal of the Path: How AJ Osborne, the Guru of Self-Storage Investing and Owner of

Cedar Creek Capital, Failed Geography — and Investors." A true and correct copy of this blog post is attached as **Exhibit 1**.

12. This blog post contains a number of false statements, including, but not limited to:

   a. "Similarly, you place your feet on the path of lying to get money, that road has one ultimate destination — prison." Which falsely implies that Osborne has committed some crime(s) for which he will be imprisoned.

   b. "[Cedar Creek] has **four portfolio-wide cross-collateralized loans** that encumber approximately one third of their total portfolio of currently owned assets."

   c. "Most of everything else points to one familiar and often repeated pattern: extend (lie a lot), borrow (lie even more to get money), cross-collateralize (lie by not disclosing), repeat."

   d. "Investors already whisper about Fund I's failure."

   e. "**Three of six properties — 50 % of the fund — were over-encumbered within approximately 90 days of purchase—one as high as 214% LTV.**"

   f. "Here is the critical question in which all things Rule 10(b)-5 depends. Would a reasonable investor in Cedar Creek Capital Fund I have placed their hard-earned savings in a fund where half of the total assets started underwater? It's not even close." This falsely implies that Osborne and Cedar Creek committed securities fraud and made false statements to investors.

   g. "That's not market volatility; that's **equity extraction at inception.**"

   h. "That's not capital management — it's financial duct tape."

   i. "Cedar Creek Capital's downfall isn't mystery; it's geography… 'investor updates' that read like optimism while balance sheets drown in mostly undisclosed debt."

  j. "You cannot lie your way to sustainability… drawn by centuries of con men…"

  k. "When you drive long enough on the road called Extend and Pretend, there's only one exit. Prison."

(Emphasis in original).

13. Each one of the foregoing statements and implications about Osborne and his businesses are false.

14. In addition to the blog post, Osborne discovered that Minkow had posted two videos to several platforms including Instagram, TikTok, and Facebook titled "Fraud Minute with Barry: 'Lifestyles of the Rich and Fraudulent'" and "Fraud Minute with Barry: 'Lifestyles of the Rich and Fraudulent' Part 2."

15. These videos make many of the same claims as the blog post and disparage Orsborne by falsely claiming that he has a large house and nice things because he is stealing money from investors. These videos also falsely claim that Osborne and Cedar Creek have increased advertising efforts in response to Minkow's claims.

16. The videos on Instagram and TikTok received a significant number of views. "Fraud Minute with Barry: 'Lifestyles of the Rich and Fraudulent'" has been viewed a total of 5,689 times on Instagram and over 12,900 times on TikTok. "Fraud Minute with Barry: 'Lifestyles of the Rich and Fraudulent' Part 2" has been viewed a total of 4,491 times on Instagram and over 10,600 times on TikTok.

17. Minkow has around 3,000 followers on LinkedIn, 36,100 followers on Instagram, and over 69,500 followers on TikTok. He has used these platforms to hurl false allegations and numerous private investment companies and lending companies.

18. Prior to posting these videos and blog posts, Minkow had no affiliation with Osborne or Cedar Creek. Minkow has never been provided official records from Osborne or Cedar Creek and lacks any facts to support the allegations of fraud that he baselessly makes against Osborne and Cedar Creek.

19. Minkow knows that his statements are false, and has demonstrated a reckless disregard for the truth of the statements he is making against Osborne and Cedar Creek.

20. As a result of these statements, Osborne and his companies have had investors express concern and hesitation with investing in new opportunities. To date, approximately $1.5 million has been withdrawn by potential investors due to Minkow's defamatory statements.

## II. Minkow's History of Similar Conduct and Criminal Convictions

21. By way of background, Minkow is a three-time convicted felon, having been convicted on three separate times on federal felony charges of fraud and other *crimen falsi*.

22. According to the FBI, "In December 1988, Minkow was convicted of running an elaborate Ponzi scheme related to his ZZZZ Best carpet cleaning enterprise, a NASDAQ-traded entity. In that case, Minkow bilked banks and investors of millions of dollars, for which he was sentenced to 25 years in prison." "Notorious Conman-Turned-Pastor Barry Minkow Sentenced to Five Years in Prison for Bilking Congregation of More Than $3 Million", Fbi.gov, *FBI*, Apr. 28 2014, [Notorious Conman-Turned-Pastor Barry Minkow Sentenced to Five Years in Prison for Bilking Congregation of More Than $3 Million — FBI](#) (last accessed Oct. 31, 2025).

23. After his incarceration for the ZZZZ Best Ponzi Scheme, he became a pastor at a church in San Diego, California, called Community Bible Church ("CBC"). *Id.* He also founded a company called Fraud Discovery Institute ("FDI") through which he touted himself as a fraud detection expert. *Id.*

24.     However, Minkow used FDI to "manipulat[e] the stock prices of the companies he was investigating." *Id.* In one such instance, he released a report on a home building company called Lennar accusing Lennar of "massive accounting irregularities and fraud. In the wake of this report, Lennar's share price was sliced in half—from $11.57 a share to $6.55 a share. According to court records, unbeknownst to the public, Minkow shorted Lennar stock in advance of the issuance of his report." *Id.* Minkow pled guilty to "conspiring to manipulate Lennar's share price, for which he was sentenced to serve five years in prison and to pay $583.5 million in restitution to Lennar." *Id.*

25.     Around the same time, Minkow also pled guilty to defrauding members of CBC, particularly a widow and widower, out of $375,000, "opening unauthorized bank accounts on behalf of the church, forging signatures on the SDCBC checks, using funds drawn on legitimate church accounts for his personal benefit, and charging unauthorized personal expenses on church credit cards." *Id.*

26.     On information and belief, Minkow was released from federal custody in 2018. He appears to have started social media accounts around the same time, on which accounts he claims that he is "unmasking financial scams & frauds."

27.     In reality, Minkow appears to be reviving his own past conduct by making unsubstantiated and untruthful statements about upstanding individuals and companies like Osborne and Cedar Creek, in an effort to profit by building a social media following and appearing in documentaries and movies.

28.     To this point, Minkow has appeared in a movie and a documentary about his various criminal schemes including "Con Man," a biopic that was released in 2018, and "King of the Con,"

a docuseries released in 2022. Minkow is also appearing in movie called "Paydirt" that is expected to be released in 2026.

29. Whether he is seeking money or fame, it is clear that Minkow is employing his established *modus operandi* to victimize and exploit legitimate companies and businessmen for his own gain, not to expose real fraud.

## FIRST CAUSE OF ACTION

## DEFAMATION AND DEFAMATION *PER SE*

30. The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

31. Minkow has published false statements and false implications to the public regarding Osborne and his companies, including Cedar Creek, alleging that Osborne is defrauding investors, stealing money from investors, failing to disclose information to investors, and violating federal laws. Minkow has also publicly stated that Osborne will end up in prison.

32. Minkow's false statements regarding Osborne and Cedar Creek have harmed Osborne's reputation, by subjecting him and his companies to public contempt, disgrace, or ridicule, and/or by adversely affecting his business.

33. Minkow's false statements regarding Osborne and Cedar Creek involve alleged criminal offenses and matters incompatible with business.

34. Minkow's statements have also jeopardized the stability of current investments managed by Osborne and his companies and the ability to raise future capital by instilling fear into current and potential investors.

35. As a result of Minkow's defamatory statements, Osborne has suffered actual and special damages, including attorney fees, lost profits, and declines in revenue, in an amount to be established at trial which will exceed $75,000.

36. Minkow's defamation is ongoing, and if not enjoined, Osborne will suffer continued irreparable injury, loss, and/or damage. Minkow must be enjoined from making further defamatory statements. The value of this non-monetary relief exceeds $75,000.

## SECOND CAUSE OF ACTION

### INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

37. The foregoing paragraphs are hereby incorporated by this reference and restated as if set forth in full.

38. Osborne had a valid economic expectancy that his current investors would remain investors and invest in future projects.

39. Minkow was aware of the investments managed by Osborne and specifically cites to existing investments and current fundraising activity in his statements.

40. Minkow is intentionally interfering with Osborne's economic expectancy by encouraging present and potential investors to divest from, and to not invest further in, Osborne's companies.

41. Minkow's interference was wrongful because he is knowingly or recklessly making false statements with complete disregard for the economic impact on Osborne and his business and with the sole objective of furthering his own business efforts.

42. As a result of Minkow's interference, Osborne has been damaged in an amount to be established at trial which will exceed $75,000.

43. Minkow's interference is ongoing, and if not enjoined, Osborne will suffer continued irreparable injury, loss, and/or damage. Minkow must be enjoined from making false statements and interfering further with Osborne's economic expectancies. The value of this non-monetary relief exceeds $75,000.

## ATTORNEYS FEEES

Plaintiff is entitled to its attorney fees pursuant to Idaho Code §§ 12-120, 12-121, F.R.C.P. 54, and as otherwise allowed by law, in such amount as this Court may find reasonable at the appropriate time in these proceedings.

## DEMAND FOR JURY TRIAL

Pursuant to F.R.C.P. 38, Plaintiff demands a trial by a jury of 12 jurors on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendant as follows:

1. For the Court to find favor of Plaintiff and against Defendant on all causes of actions plead herein.

2. For a judgment permanently enjoining Defendant from defaming Plaintiff, Cedar Creek, or any other company owned by or affiliated with Plaintiff.

3. For a monetary judgment awarding Plaintiff damages, including special damages, for defamation/defamation *per se* and intentional interference with a prospective economic advantage in an amount to be proven at trial.

4. For an award or costs and attorney's fees incurred by Plaintiff in his prosecution of this action.

5. For such other relief the Court deems appropriate.

DATED: November 10, 2025						DORSEY & WHITNEY, LLP

By: */s/ Aaron R. Bell*
    Elijah M. Watkins
    Aaron R. Bell
    Email: watkins.elijah@dorsey.com
    Email: bell.aaron@dorsey.com

*Attorneys for Plaintiffs*